Mr. Mason. Good morning, Your Honor. This may please the Court. We're here on a de novo review for declaratory judgment jurisdiction based on facts set out on an amended complaint. I'd like to point out just three of those facts right up front that JIA, the plaintiff, the DJA plaintiff, intended to copy the defendant's product and that product was advertised as covered by the defendant's patent. Second fact, again, alleged in the amended complaint, is that the patent… Intended to but didn't take steps to, is that right? No, Your Honor. It did indeed take steps to but did not. It stopped short of infringement. That's my quote? This is a very simple product. It's string with little parts of a screw and a nut around it. This is a $70 product and that's what was in the complaint. We're not talking about a chemical processing plant where you need billions of dollars to prepare. It took what it took short of infringement. But is the principle different? The principle is that you do not need to infringe in order to have DJA jurisdiction. But the fact be here, Pandora has taken no action directed at you at all, has it? I would… The record indicates none. Has there been something? There has not been JIA, Steve, you are infringing. There hasn't been that kind of direct communication. Has there been any communication between Pandora and you? Yes, Your Honor. We would contend there is communication. The communication is that it told any manufacturer of this product that it is an infringement by two facts. One, that in its own advertisement of its own product, it says it's covered by the patent. But it didn't contact you. That was just… That is admitted, Your Honor. There is no direct contact. JIA, you are infringing. The second fact, Your Honor, is… So you announce, as you're supposed to under the statute, that you have a patent and you mark your patent. You're saying that's enough because you're announcing to the world, I have a patent. That is enough contact with you to require you to rush to the court to exonerate yourself from future infringement. No, Your Honor. That is not JIA's position. The second fact that I wanted to point out is that JIA took additional steps. It sued a third party under this patent for this product. And in that context, under all of those circumstances, that's correct, Your Honor. But that's no action directed at you. That is an action directed at JIA in the sense of JIA, any nameless person, if you manufacture this product, you will be sued. We contend that this product is an infringement. Now, do I have to say ABC Company… By suing one person, I have instructed everybody else in the world that I will be suing you? On that product, yes, Your Honor. Is that right? That is JIA's position. Is there any case law you have to support that proposition? No, Your Honor. I think the logical consequences… As a matter of fact, it probably goes the other way that we assume you're not going to sue until you do it, right? No, Your Honor. I don't think that is the case law. I think that if there are ten manufacturers of a widget and the patent holder sues manufacturer number one, and then manufacturer number two, and then manufacturer number three, but never sends a letter to manufacturer number six, I see no logical reason why manufacturer number six has to sit and wait. Either, in this case, not go into the business, or just sit and wait until it's been sued. That wouldn't be this case, though, would it? This is the case. One instance of them suing one… One or six, I don't see the theoretical difference, Your Honor. And your client has taken no actions to infringe? It has taken what it believes under the law to have DJ jurisdiction. It has not infringed. It has taken steps to infringe. And what are those steps? It has received a quote on a $70 piece of equipment. Do you have anything more in terms of an established business? Do you have offices and manufacturing plants and anything which shows we're doing this? No, Your Honor. They are absolutely not doing it. They are taking the steps short of infringement. Infringement is not required. They didn't do it. They did not. And did not want to do it until they got the opinion. That's correct, Your Honor. If they had taken the steps… Isn't what you were seeking is really an advisory opinion as opposed to a declaratory judgment? JIA's position is absolutely not, Your Honor. Had JIA said it would like to produce a product that is similar to a product that has been accused of infringement, yes. Then that is more of a theoretical… If we were to do such and such, and if we were to do it in this way, then would we be infringing? That's an advisory opinion, isn't it? It is not an advisory opinion in the sense that the product is set and specific. It has the exact product of Pandora. It is the product that Pajul manufactured. It's the product that Pandora has accused Pajul of infringing. It is the product that Pandora has said publicly, if you manufacture this product, it's an infringement. It's not the product that would make an advisory. It's the word if. You always have the word if because the court's precedent is very clear. You need not infringe because once you infringe, you then risk trouble damages and attorney's fees, and that is not the requirement. By the way, why do you need to do this? Why don't you just wait and see what happens in Pajul? Oh, because they all get settled, Your Honor. What's that? They all get settled. I mean, that's the typical DJ issue. You have a patent holder that threatens and then settles. And if Pajul had indeed gone through a trial and been up on appeal, then there would be no reason, of course, because we would know that the patent is either valid and or infringed. There would be no case. It would have already been settled. The question here is, of course, that they are taking the same scare and run tactics that the DJ. Except that they haven't scared you. They haven't. They haven't taken a single step towards you. They have, Your Honor, in that they have said, if you manufacture this product, you will be sued. Have they said that to you? Have you got a letter? Have you got anything that says that? They have not said it to ABC Company, but they have said it to the whole world. Again, we have set out a couple of hypotheticals in the brief. I just, again, logically, if you say that if you manufacture this widget, you'll be sued, why is it that you have to say, hey, Steve, you're the one who has to manufacture it. I'm going to sue you. You've told the world that you're going to be, that you're enforcing your patent against this product. If you have a different patent, a different product, a different company, a third party that you've sued, yes, those are the prior cases. But to reach out and require the DJ plaintiff to have been contacted directly and specifically by name is something the Supreme Court precedent just doesn't support. It's an all-circumstances test. And to require that the patent holder contact the DJ plaintiff is what JIA is asserting to the court that is not required. Again, as far as whether it is a requirement that you infringe, it's clearly not. Didn't our Costco case make it clear that marking products alone is not support for DJ jurisdiction? That's not the issue I believe the JIA has raised. If that is indeed the case, that all they did was mark a product, we wouldn't be here. They have sued this product by casual. Should we hear from Mr. Hanson? Yes, Your Honor. Thank you. Your Honor, may it please this honorable court, good morning. Judge Blake in the District of Maryland correctly applied the medium test as adopted by this court. Finding the first problem which in this using the overlapping standing, ripeness, just disability issues, we view and we believe the judge viewed as a standing issue. I think the court is exactly right. And in the association of molecular case that was vacated, Your Honor, but not on these grounds, was vacated because of the case involving the Mayo and the natural phenomenon patentability. I understand, Your Honor, that the case has been re-argued. The order on the briefing had nothing to do with the declaratory judgment aspect of that case. That case was decided in advance of Judge Blake's decision and it's on all fours. If the court didn't require some communication, what we would have is a situation where anyone could have a subjective fear. Now, Prasco tells us you can't have subjective, it must be objective. Now, Supreme Court said that Medellin can't have the apprehension standard anymore, but there still has to be an objective standard. If there wasn't, anybody could target a successful company that bases its success on its patent portfolio and decide I'm going to hold you up because I'm thinking of building it, I've gotten a price quote. What about the fact that he sued someone else? Isn't that a suggestion that we're coming after you? Well, it's one of the factors. I think the irreducible minimum that was found in the association of cases, I believe you also ruled in the 3M case, Your Honor, is there has to be an affirmative step taken by the patent holder directed against the person who would be the accused infringer. There's none here. We didn't write them. Heck, we didn't even know they existed. And in fact, they didn't exist before six weeks before they took us to the Eastern District. Is that practical in a business sense? You have someone who wants to set up a production line, a particular product. They know they're copying your exact product. They're copying it, and they say they are. Doesn't it make sense to find out, first of all, whether the threats you're making, or is it reasonable to find that the threats you're making to others also would be threatening to them? Well, the way I understand it is done often, Your Honor, is someone writes a letter, makes a phone call. All the cases that I've read on this issue by this course, both pre- and post-Meteun, have that. It's never been this kind of issue. I think if this complete lack of communication is tolerated, we're going to have now a species of reverse patent trolls who are going to arise, like I suspect JIA did, in order to sue you, threatening to invalidate your patent. So you're relying on the lack of contact by the patentee, rather than the lack of action and preparation and infringement by the plaintiff? Well, I'm doing that, Your Honor, because that's what Judge Blake found. She did not go on and find the second problem, because she said, I don't have to under the controlling authorities. Since this is a de novo consideration, Your Honor, yes. The second one, the second problem, is the actions of the accused, the potential infringer. The first problem is the actions of the patent holder. Now again, the Supreme Court and everybody uses these terms kind of mixed up, but I think the second one is a rightness issue. Is it right for determination? Is it concrete? Now, getting a price quote as your only claim of concreteness is a reductio absurdum. It goes nowhere. And again, if that's the standard, then the next reverse patent troll is going to have the subjective injury, because they want to do it, and they're going to get a price quote. They're not going to have a prototype. They're not going to even be in the industry. Judge Raina, if they were a real competitor, and they wanted to do it, and they say, we're going to do it, what are you going to do about it? And they send us a letter that puts us to the test. And perhaps we could have ignored the letter. I've seen cases where even if you ignore the letter, a justiciable controversy doesn't arise. So as the court said in Hewlett-Packard, the lower standard of metemune is not no bar. It is a bar. There has to be a bar. If there isn't a bar, then we are going to have a monstrous situation on our hands. Well, even metemune requires a legal dispute, doesn't it? It does, Your Honor. Do we have a legal dispute? Not in my analysis of the prevailing authorities. This is constitutional. This is Article III. Now, the Supreme Judicial Court of Massachusetts gives advisory opinions. They probably wouldn't on this. But the Constitution says our courts and the federal system cannot. There must be an actual case of controversy. The implementing statute, declaratory judgment statute, requires the same. And throughout our jurisprudence, it has never been a subjective feeling. It has to be measurable. There has to be communication between the parties. Otherwise, it's a blind ambush. So this situation, Your Honor, is, I think, to put it dire. I don't think the court has any reason to hold as being urged by JIA. Indeed, the court has held adversely to JIA. This is not, in my view, a reasonable application of metemune. This, in my view, is not a reasonable application of any of the theories of justicability, be they ripeness or be they any. It is a situation that, if allowed to go forward, would create a crisis in our courts. All I can say is I remember what happened when the court read the plain language of a statute with the marking. If the court opens the door now to saying you can be subjective and all you have to do is get a price quote that you don't even have to tell anyone about, that you don't even have to have a business, then everybody is going to sue. And every big patent holder, be they Apple or Microsoft or my client, who is a very successful jewelry manufacturer, is in the crosshairs. So, Your Honors, we think this is an important case. Thank you, Mr. Hanson. Thank you. Mr. Hanson, you have over six minutes. Thank you, Your Honor. JIA thinks this is an important case as well. The scare tactics of what this court may do and what might happen as the consequences and to compare it to the false marking ketam cases I think is not particularly bad. The court determines what the law is. If the law is incorrect, the legislature changes it. That's exactly what happened. Everybody did their role. Here, not everybody that gets a quote is going to be suing Microsoft. It's a fact-specific situation. You don't need manufacturing facilities to make this. You call. You pick up the phone. You call to China. You send them a string of screw and a nut, and you get back thousands of pieces. You put a website up, and you're done. You want to infringe or potentially infringe on a patent from Microsoft or Apple, you have a whole different situation. So it's fact-specific. Reverse patent trolls, I don't really know what that term means. Again, I think that you have a fact-specific situation, as the Supreme Court has said, and all circumstances test. I think that we have what the Supreme Court said was D.J. jurisdiction. The dispute be definite and concrete, touching the legal relations, having adverse legal interests. Clearly, there's a patent holder believing that this product is an infringement, and the person that wants to produce that product claiming that it's not an infringement or that the patent's valid, that it's real and substantial. Certainly, this is real and substantial. It's a patent infringement case. Specific relief would decree of a conclusive nature. Again, if the prior case, the Bajul case or any of the prior cases, would go to a judgment, come up on appeal, then we wouldn't have a case here. Instead, it's the scare tactics. The patent holder has no problem filing 10, 15 suits, settling them all. It chose to put its patent on the chopping block, so to speak, by suing Bajul and saying that this patent covers this product,  Was that a case of a hypothetical scenario that you were trying to get the judge to address? I don't think so, Your Honor. It is a specific product. It's a specific patent. That patent holder has... That's true, but what did you have that was specific? We had everything necessary prior to infringement. And the case law is clear. You need not infringe. Did you have more than a price quote? Under these circumstances, I don't think anything more than a price quote is necessary. So you were posing a hypothetical to the court and saying, under this scenario, all I have is a price quote. No more so of a hypothetical than any D.J. plaintiff that does not have a product. And that is clear that a D.J. plaintiff need not produce a product. The response was, I think, a quote from Sierra that, you know, the product could be changed easily, and so you're dealing with a hypothetical request. In that situation, they had... It was not an attack on the pleadings. There was testimony that the product was at least a year away in design. It was a 150,000-watt power supply. Here again, we're dealing with strings and nuts and bolts, technology that's been around for thousands of years. Under these circumstances, under the pleadings that we have to take as true, as set, they took concrete steps. Now, I certainly understand that, perhaps on remand, that Pandora is going to challenge that, and it will be a summary judgment issue, or it will be something on the facts. They have the right to do that. Whether they prevail or not, I don't know. The question, though, is whether there is D.J. jurisdiction on these facts. If there are no other questions, Your Honor, I will encourage the remainder of my time. Thank you, Mr. Mason. Thank you.